## UNITED STATES v. CANADIAN AMERICAN SPIRITS, Inc., et al.

### Civ. A. No. 3671.

District Court, D. New Jersey.

Feb. 25, 1948.

Edgar H. Rossbach, U. S. Atty., of Newark, N. J., and John J. Corcoran, Asst. U. S. Atty., of Jersey City, N. J., for the Government.

Gross & Gross and Benjamin Gross, all of Jersey City, N. J., for defendants.

MEANEY, District Judge.

This is a civil action brought by the Administrator of the Office of Price Administration against the defendants, Canadian American Spirits Corporation, and Henry W. Metzger, under and pursuant to the provisions of Section 205(e) of the Emergency Price Control Act of 1942, as amended, 50 U.S.C.A. Appendix, § 901 et seq. Subsequent to institution of the suit, but prior to the trial of the issues before this court without a jury, the United States of America on motion, was ordered substituted as plaintiff in the place and stead of the Price Administrator.

The complaint as amended is in two counts. Count one alleges the sale and delivery by defendants of 700 cases of Abe Lincoln Whiskey between June 11, 1943 and August 31, 1943, said sale being at prices in excess of the established maximum. The aggregate amount paid in excess of the maximum price was asserted to be $8,820.00 and the complaint seeks judgment in treble that amount. There is the further allegation that the transactions were not other than in the course of trade or business.

At the conclusion of the plaintiff's case, the government abandoned count two and it was dismissed accordingly.

In answer to the complaint, defendants denied all material allegations of over the ceiling sales.

At the trial of the issues, with the exception of proving the then existing maximum price for the sales in question, the government relied entirely upon the testimony of one, Sidney Hammerman, who testified that he paid in cash, a total of $12.60 overage on each case sold to him by the defendants.

Hammerman's testimony was to the effect that at the time of the transactions in question, he worked as a liquor salesman in the State of Ohio where his job was "promotion mostly". He testified that between January 1, 1943 and May of that year there was a liquor shortage. This period antedated the time covered in the complaint. He further stated that early in the year he was introduced to the defendant Metzger but did no business with him until some time later when, it was stated an agreement was reached for the sale of liquor to him, Hammerman, for $32.00 per case, the overage to be paid in cash and the maximum price of $20.00 to be billed.

There was no dispute as to the number of cases actually sold between the dates alleged in the complaint, the parties stipulating that there were 700 cases of liquor sold in that period.

For his part, defendant Metzger categorically denied the statements made by Hammerman, asserting that he received nothing over the ceiling price on any liquor sold and delivered, and his records, for what they are worth, indicate such a situation.

At no time during any of the transactions in question were there any witnesses to any of the meetings between Metzger and Hammerman. Thus any determination becomes dependent upon the question of veracity between the witness Hammerman and the defendant.

While the recital of the transactions as they were related by the defendant, in the face of practical realities of normal human conduct, is difficult of belief, it is no less credible than the story told by the chief government witness.

■ The proofs requisite in a suit brought for recovery under this Act are the same as those of any civil action, for while suits under the Act partake of the nature of a penal action, the recovery allowed is in the nature of damages and is remedial as distinguished from penal. Dorsey v. Martin, D.C., 58 F.Supp. 722; Everly v. Zepp, D.C., 57 F.Supp. 303.

■ Nevertheless, this court is not satisfied that the government in the face of all the testimony, has proved a violation of the Act by even a reasonable preponderance of the evidence. Corroborative proof, which would seem to be available in a case of this nature, is entirely lacking. Whatever the probabilities may be, as inferable from the skullduggery widely existent in the liquor traffic at the time of established ceiling prices, something more in the way of tangible evidence of illegal operation should be adduced than has been brought out in the plaintiff's case before judgment in its favor could be rendered. Chicanery

and the gentle art of applying the double cross were at the time commonplace on the part of entrepreneurs, agents, dealers, wholesalers, and it has been alleged, distillers of spirituous liquors. But realization of the existence of such conditions does not supply in this case facts from which inferences may logically be drawn, nor does it serve as a substitute for legal proof, such as must be the basis for a judgment.

Accordingly, the court makes the following findings of fact and conclusions of law.

### Findings of Fact.

1. Plaintiff herein, the United States of America, was substituted for the Administrator of the Office of Price Administration by order of this court on the 9th day of September, 1947.

2. This action is before the court under and pursuant to the provisions of Section 205(e) of the Emergency Price Control Act of 1942 as amended, 50 U.S.C.A., Appendix, § 901 et seq., and jurisdiction is conferred under section 205(c).

3. The complaint herein was in two counts, the second of which was abandoned at the conclusion of the government's case and dismissed accordingly.

4. The ceiling price applicable to the liquor sold in this suit was $20 per case.

5. By stipulation of the parties, it was agreed that 700 cases of Abe Lincoln Whiskey were sold by defendants to one, Hammerman, between the period of June 11, 1943 and August 31, 1943.

6. By the plaintiff's own testimony there was a liquor shortage between January 1, 1943 and May 1943. This period of shortage ante-dated the time covered in the complaint.

7. Defendants categorically denied the sale of any whiskey to Hammerman at over the established maximum price.

8. There were no witnesses to any of the transactions referred to by the witness Hammerman and no tangible or corroborative proof of the alleged over the ceiling sales was produced.

9. Defendants' records, for what they are worth, support their denial of all material allegations of the complaint.

### Conclusions of Law.

1. The government has failed to prove, by even a preponderance of the evidence, any violation of the Emergency Price Control Act.

2. Judgment, accordingly, must be for the defendants.

An order may be submitted in accordance with the above determination.